UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN O'HURLEY, individually and on behalf of those similarly situated,<br>          Plaintiff,<br><br>v.<br><br>TICKETMASTER ENTERTAINMENT, INC., TICKETSNOW.COM, INC., JOHN DOES (1-10), and ABC COMPANIES (1-5),<br>          Defendants. | **FILED ELECTRONICALLY**<br><br>CIVIL ACTION NO.: |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, John O'Hurley, by and through his counsel, individually and on behalf of all other persons similarly situated, complains against the defendants and says:

**INTRODUCTION**

1.      This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who attempted to purchase tickets for various events from Defendant, Ticketmaster Entertainment, Inc., ("Ticketmaster"), were directed by Ticketmaster to Defendant, TicketsNow.com, Inc. ("TicketsNow"), and who purchased tickets from TicketsNow at a ticket price that was higher than the face value of the tickets during the period beginning on January 15, 2008 (the date of the acquisition of TicketsNow by Ticketmaster) through the present.  Excluded from the Class are individuals who purchased tickets for the Bruce Springsteen Concert that was the subject of a February 23, 2009 settlement between Ticketmaster and the New Jersey Attorney General's Office.  Such exclusion is limited only to such concert.  Also excluded from the Class are the Defendants,

1

any entity in which Defendants have a controlling interest and any officers, directors or employees of the Defendants.

2.  During the class period, Ticketmaster and TicketsNow (a wholly owned subsidiary of Ticketmaster) conspired to defraud the Class by engaging in an unlawful scheme to artificially and systematically inflate the prices of event tickets sold by Defendants.

3.  Through agreements with venues artists and/or event promoters, Ticketmaster obtains (usually exclusive) rights to sell tickets to sporting, music, and other entertainment events. These tickets are sold on their website, www.ticketmaster.com. When tickets are scheduled to go on sale, customers typically log into the Ticketmaster website and purchase the desired tickets. However, Ticketmaster has engaged in a practice whereby large quantities of tickets, usually the most desirable tickets, are sold, redirected or otherwise conveyed by express or implicit agreement to TicketsNow.com, which charges ticket purchasers more than face value for tickets, sometimes up to thousands of dollars more than face value.

4.  The result is that, within minutes or even seconds of tickets going on sale at Ticketmaster, purchasers are informed that tickets to an event are sold out or otherwise unavailable. These individuals are then rerouted directly from Ticketmaster's website to TicketsNow.com. The format and layout of the two webpages are purposely similar to conceal that TicketsNow is a separate entity, which sells tickets on the secondary market and at above face value. In fact, TicketsNow expressly identifies itself as a Ticketmaster

company.  Consequently, customers redirected to TicketsNow believe that they are purchasing tickets at face value directly from Ticketmaster.

5. This artificial manipulation of the market price for tickets results in purchasers having no choice but to pay grossly inflated prices for tickets, just minutes after the tickets first become available to the public.

6. The aforesaid acts constitutes fraudulent misrepresentation and/or suppression, and results in the Defendants' unjust enrichment. This action seeks, *inter alia*, damages and compensation to all class members from the Defendants, interest, disgorgement, punitive damages, costs of suit, treble damages and attorneys' fees as permitted under the common law, and any other damages deemed just and proper by the Court.

## PARTIES

7. Plaintiff, John O'Hurley, is a Massachusetts resident. On January 31, 2009, he attempted to purchase two tickets for a Phish concert for himself and a friend. He attempted to purchase the tickets on Ticketmaster's website, but was redirected to TicketsNow. On TicketsNow website he purchased two tickets to the concert for a total of $455.40, including all fees but failed to print a confirmation receipt knowing TicketsNow would email him a receipt. Ten minutes after completing the purchase he received an email with the subject "Your Phish Order Has Been Received" from websales@ticketsnow.com stating that he had ordered nine (9) tickets for a total cost of $2,064.25 for nine tickets with a face value of $60.00 each.

8. Ticketmaster Entertainment, Inc. d/b/a Ticketmaster, f/k/a Tickemaster, LLC, ("Ticketmaster") is a Delaware corporation and has its principal corporate offices at 8800 W. Sunset Blvd, West Hollywood, California, 90069.

9. Ticketmaster holds itself out as the world's largest ticketing services company.

10. TicketsNow.com, Inc., is an Illinois corporation and has principal corporate offices located at 3800 Golf Road, Suite 125, Rolling Meadows, Illinois, 60008 and 620 N. Rte. 31, Suite C, Crystal Lake, Illinois, 60012.

11. On January 15, 2008, Ticketmaster acquired TicketsNow, which presently operates as a wholly-owned subsidiary of Ticketmaster.

12. TicketsNow operates as a marketplace and broker in the secondary resale market for event tickets.

13. Defendants, John Does 1 - 10 and ABC Corporations 1 - 10, are fictitious names representing one or more persons, partnerships, corporations or other entities, whose identities are presently unknown to Plaintiffs, and who are liable to Plaintiffs and the Class as fully and completely as set forth herein as to any other Defendants. Despite diligent inquiry, the identities of these fictitious defendants are not known and will be more specifically named as the ongoing course of discovery reveals.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because members of the Nationwide Class are citizens from a state different from the Defendants' corporate residence and the

aggregate amount in controversy exceeds $5,000,000. This Court has personal jurisdiction over the parties because Plaintiff is located in and is a resident of this Commonwealth, and Defendants systematically and continuously conduct business in this Commonwealth, including marketing, advertising, and selling tickets to residents in this Commonwealth for events located in this Commonwealth.

15. Venue is proper in this District under 28 U.S.C. § 1391 because Ticketmaster and TicketsNow and the other named defendants engaged in substantial conduct relevant to Plaintiff's claims within this District and caused harm to the Plaintiff and Class members residing within this District.

## SUBSTANTIVE ALLEGATIONS

16. Ticketmaster is the largest seller of event tickets in the world. In 2007, the company sold more than 141 million tickets with a value of more than $8.3 billion dollars.

17. TicketsNow is the second largest seller of event tickets in the secondary resale market.

18. Combined, Ticketmaster and TicketsNow are, by a wide margin, the largest seller of event tickets in the primary and secondary ticket markets.

19. The face value of tickets sold by Ticketmaster is routinely significantly less than the market value of those tickets as sold in the secondary market, particularly for high demand sporting and entertainment events.

20. Ticketmaster earns a commission and other charges on each ticket sold, first, in the primary ticket market and, subsequently, in the secondary sales market when tickets are sold through its subsidiary TicketsNow.

21. Tickets in the secondary market are routinely sold at a much higher price than the face value of the ticket earned by Ticketmaster in the primary market and, hence, tickets sold there earn significantly higher commissions and other charges which, at least in part, are based upon the sale price (market value) of the ticket.

22. Ticketmaster works closely with event owners and promoters, artists and artist management companies to set the face value price of tickets that are distributed in the primary ticket market.

23. In addition to earning sales charges and commissions on tickets sold in the primary market, Ticketmaster has every economic incentive to attempt to direct ticket purchasers and ticket sellers/brokers to use its secondary market seller TicketsNow through which to sell tickets.

24. Ticketmaster and TicketsNow earn commissions and other charges in the secondary market when brokers and others re-sell through TicketsNow.

25. Those commissions and sales charges obtained in the secondary market are not earned when individual members of the public purchase tickets in the primary market from Ticketmaster and then use those tickets or sell them in private sales (i.e. do not attempt to resell them in the secondary market).

26. Ticketmaster and TicketsNow have every economic incentive to maximize the number of tickets resold in the secondary market through TicketsNow, both directly and through brokers, and to minimize the number of tickets purchased in the primary market and used by individual members of the public.

27. Many large independent ticket brokers, in addition to individual ticket purchasers among the public, attempt to purchase tickets from Ticketmaster when they go on sale at set times.

28. Within literally moments of tickets going on sale by Ticketmaster, and often less than one minute later for high-demand events, those tickets are being offered for resale in the secondary market by Ticketsnow at greatly inflated prices.

29. Ticketmaster works closely with TicketsNow and brokers, artists, artist management companies, event owners and promoters and others, to move tickets directly to the secondary ticket resale market through TicketsNow.

30. Ticketmaster also works closely with artists, artist management companies, event owners and promoters and others to bypass the primary ticket market and move tickets directly to the secondary market, and specifically to TicketsNow, where higher commissions and other charges are earned without the opportunity for members of the public to purchase such tickets at face value in the primary market.

31. The assistance and information provided by Ticketmaster and TicketsNow and the movement of tickets directly to the secondary market contradicts the stated representations of Ticketmaster and TicketsNow that they do not provide such assistance to ticket brokers and others and that they provide members of the public with equal opportunity and access to purchase all such event tickets.

32. TicketsNow former president Cheryl Rosner even stated on July 17, 2008 on her blog, that one of Ticketmaster's early goals was to begin "driving customers to TicketsNow.com" – not just when no tickets were available in the primary market.

7

33. Ticketmaster affirmatively represents to the public that ticket brokers acquire tickets by means of "put[ting] their capital at risk by purchasing tickets from season ticket holders, conventional public sales, and individual ticket holders… This means that they and their affiliates are online at the time of the onsale just like any other consumer." This is not accurate or true as Ticketmaster, through its subsidiaries, ensures that brokers and others have a distinct advantage in purchasing event tickets in the primary market and transferring them to the secondary market to the detriment of individual public purchasers who do not have an equal purchase opportunity.

34. TicketsNow specifically represents to the public that "We don't divert tickets from Ticketmaster and list them for resale on TicketsNow. This simply does not happen." This is not accurate or true. Ticketmaster and TicketsNow do divert tickets for sale on the TicketsNow website and this has been confirmed through reporting by industry trade publications with knowledge of such transaction details. Furthermore, TicketsNow's own website even states that "The tickets offered through TicketsNow are owned, listed for sale and fulfilled by the party listing the ticket (which on occasion may include TicketsNow/Ticketmaster)."

35. These misrepresentations and inaccurate statements lead consumers to believe that tickets are being offered on TicketsNow only when there are no tickets remaining or available in the primary ticket market and, further, that there is no common interest between Ticketmaster and TicketsNow in moving tickets to the secondary ticket market. Individual purchasers are therefore misled to purchase more expensive tickets on the TicketsNow website as the only available option.

36. Ticketmaster also affirmatively represents to the public that it "has been at the forefront of efforts to prevent the illegal diversion of tickets away from fans by the use of automated programs." This is not true or accurate.

37. Defendants' practices, among other characterizations, constitute a straight-forward "bait and switch" scheme.

38. In addition to affirmative misrepresentations and misleading consumers as described, Ticketmaster and its subsidiaries engage in other types of wrongful and fraudulent conduct. When tickets go on sale in the primary market through Ticketmaster, Ticketmaster will often communicate to ticket purchasers (within moments of the offered sale time) that "no tickets are available" or that there are "technical problems" with the purchase and immediately direct purchasers to the TicketsNow website where tickets are offered and available at prices that are often many times higher than the face value of the ticket.

39. This automatic redirection to the TicketsNow website and the sale of tickets at significant mark-up to the purchaser above the face value of the ticket is not adequately or reasonably communicated to the purchaser.

40. Many purchasers have purchased tickets from the TicketsNow website at a market value that was significantly above the face value of the tickets without being reasonably and adequately informed that they were no longer purchasing tickets in the primary ticket market through Ticketmaster. They are also not informed of the face value of the tickets at the time of the purchase.

41.     Ticketmaster, in an open letter dated February 10, 2009, has apologized for this precise conduct in the sale of tickets to purchasers involving the Bruce Springsteen concerts that went on sale on February 2, 2009.

42.     As part of its apology and remediation program, refunds have been offered to purchasers of Bruce Springsteen tickets on the difference between the face value of the ticket (as offered for sale in the primary market through Ticketmaster) and the actual market value purchase price paid (as actually purchased in the secondary market through TicketsNow).

43.     Further, on February 23, 2009, defendant Ticketmaster entered into a settlement with the New Jersey Attorney General's Office regarding claims of consumer fraud made by over 2,000 consumers in relation to the sale of the Bruce Springsteen concert tickets.

44.     This settlement compelled Ticketmaster to provide certain consumers with either entry into a drawing to purchase Springsteen concert tickets or a coupon for discounted concert tickets for a subsequent event, and/or a refund of overpayments made to TicketsNow. Further, the Attorney General compelled Ticketmaster to erect a "wall" between Ticket master's website and TicketsNow.com for at least a year.

45.     The conduct that Ticketmaster apologized for related to the Bruce Springsteen concerts, however, it has taken place in numerous prior instances in events for Phish, the Grateful Dead, Britney Spears, Radiohead, the Wizard of Oz, Hannah Montana and numerous others. No remedy has been offered to consumers by Ticketmaster or TicketsNow for the conduct related to the sale of tickets for any other concert or event.

## CLASS ALLEGATIONS

46. As presently defined, the proposed Class includes:

all persons who attempted to purchase tickets for various events from Defendant, Ticketmaster Entertainment, Inc., ("Ticketmaster"), were directed by Ticketmaster to Defendant, TicketsNow.com, Inc. ("TicketsNow"), and who purchased tickets from TicketsNow at a ticket price that was higher than the face value of the tickets during the period beginning on January 15, 2008 (the date of the acquisition of TicketsNow by Ticketmaster) through the present.

Excluded from the Class are individuals who purchased tickets for the Bruce Springsteen Concert that was the subject of a February 23, 2009 settlement between Ticketmaster and the New Jersey Attorney General's Office. Such exclusion is limited only to such concert. Also excluded from the Class are the Defendants, any entity in which Defendants have a controlling interest and any officers, directors or employees of the Defendants.

47. The proposed Class is so numerous that the individual joinder of all its members is impractical. The exact number of class members is unknown at this time but can be ascertained through appropriate investigation and discovery of the Defendants' records. Plaintiffs believe that the number of class members is in the hundreds of thousands or even millions. As a result, joinder of all class members in a single action is impractical.

48. The Class is manageable, and its members are identifiable through the Defendants' business records.

49. There exists in this matter questions of law and fact arising out of the Defendants' conduct which are common to all members of the Class and which questions predominate over individual questions. Among the numerous questions of law and fact common to the Class are:

    a. whether the Defendants engaged in an illegal scheme to divert tickets from Ticketmaster to TicketsNow via third-party brokers or other individuals or entities in order to inflate the price of the tickets and hence the revenue generated for the benefit of Ticketmaster;

b. whether Ticketmaster intentionally redirected customers from its website to TicketsNow.com without adequately indicating that the customers were being sent to a site that would charge substantially more for the same tickets sought on Ticketmaster;

c. whether Ticketmaster intentionally redirected customers from the Ticketmaster website to TicketsNow.com, even though tickets were still available at Ticketmaster;

d. whether Defendants conspired together to manipulate ticket sales with the objective of redirecting tickets from the primary market to the secondary market where such tickets would be sold at prices above face value;

e. whether Ticketmaster used or endorsed the use of software or other technology in order to redirect tickets from the primary market to Ticketsnow.com;

f. whether Defendants were unjustly enriched by their acts and omissions, at the expense of the Plaintiffs and the Class;

g. whether the Defendants made material misrepresentations of fact, or omitted material facts to Plaintiffs and the Class regarding the ticket sale transactions, which material misrepresentations or omissions operated as a fraud and deceit upon the Class;

h. whether Plaintiffs and the putative class sustained damage and loss thereby;

i. the scope, extent, and measure of damages and equitable relief that should be awarded;

j. whether the Defendants' acts and omissions were sufficiently wrongful so as to entitle Plaintiffs and the Class to attorneys' fees, prejudgment interest, and costs of suit; and

k. whether Defendants' acts and omissions were sufficiently wrongful to entitle Plaintiffs and the Class to punitive damages.

50. Plaintiffs' claims are typical of the claims of the Class members they seek to represent. Plaintiffs and all other class members sustained damages arising out of the Defendants' common course of conduct as complained of herein.

51. The prosecution of separate actions by individual members of the Class would risk inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants and incompatible rights for members of the Class.

52. Adjudication with respect to individual class members would, as a practical matter, prove dispositive of the interests of other class members not parties to the individual adjudications and/or substantially impede the ability of the non-party class members to protect their interests.

53. The questions of fact and law common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this action.

54. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in complex civil and class action litigation and said counsel has no adverse interests and is qualified to serve as class counsel. Plaintiff understands the nature of the claims herein, have no disqualifying factors, and will vigorously represent the interests of the Class.

## COUNT I
### (Fraudulent Misrepresentation And/Or Suppression)

55. Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth at length.

56. Defendants concealed from Plaintiff, and the Class, the truthful and complete information regarding the illegal scheme involving the Defendants' mispresentations of the availability of tickets for face value on Ticketmaster which were instead transferred en masse to third-party brokers for resale on TicketsNow.com, at grossly inflated prices, without Plaintiff or any class member having any reasonable or meaningful opportunity to purchase said tickets at face value.

57. Defendants remarketed, promoted, and advertised the presence and availability of event tickets for face value on Ticketmaster's website when, in fact, there would be no such availability for Plaintiff or the Class to purchase said event tickets from the Ticketmaster site at face value.

58. The foregoing fraudulent omissions and misrepresentations caused Plaintiff and the putative Class to suffer losses and damages in the amount of the monies they expended in paying for the tickets that was above the cost of the tickets on the Ticketmaster website, without knowing the existence and extent of Defendants' illegal ticket transfer scheme.

59. The Defendants' fraudulent omissions and misrepresentations had tendency, capacity, and likelihood to deceive Plaintiff and the Class.

60. The Defendants intended, or consciously disregarded, that Plaintiff and class members would rely on its fraudulent omissions and misrepresentations, so that they would have no meaningful choice but to expend monies and pay a price for the tickets that was above the face value of the tickets.

61. The Defendants had superior knowledge regarding the tickets and their availability, and regarding Defendants' illegal marketing, promotion, and advertising scheme to offer tickets to consumers at face value and then deny them tickets at that price and reroute them instead to Ticketsnow.com for tickets at a grossly inflated cost, to which knowledge Plaintiff and the class members had no access.

62. Plaintiff and the class members would not have expended such monies for tickets had they known of Defendants' illegal "bait and switch" marketing scheme, or the extent of said scheme.

63. Plaintiff and the class members would not have expended such monies but for mistaken facts arising from the Defendants' fraudulent concealment and/or suppression of its illegal "bait and switch" marketing scheme.

64. Plaintiff and the class members relied upon and were accordingly harmed by the Defendants' fraudulent concealment and/or suppression.

WHEREFORE, Plaintiff demands judgment against the Defendants, on his own behalf and that of similarly situated class members, for disgorgement of the monies by which the Defendants were unjustly enriched, compensatory damages, including interest, punitive damages, attorneys' fees, costs of suit, and other relief as this Court deems just and proper.

## COUNT II
### (Conspiracy)

65. Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth at length.

66. The Defendants conspired and acted in concert, through express agreement, implicit agreement, imitative behavior, conscious parallel behavior, or otherwise, among

themselves, with other members of the ticket sales and concert and event promotion industry and/or others.

67. Defendants together actively participated, aided, encouraged and/or ratified the fraudulent scheme to redirect tickets from the primary market to the secondary market. They concealed from Plaintiff, and the putative class, the truthful and complete information regarding the illegal scheme involving the defendants mispresentation of the availability of tickets for face value on Ticketmaster which were instead transferred en masse to third-party brokers for resale on TicketsNow.com, at grossly inflated prices, without plaintiff or any class member having any reasonable or meaningful opportunity to purchase said tickets at face value.

68. As a direct and proximate result of the joint wrongs of the Defendants, both jointly and severally, Plaintiff and the Class were caused to suffer economic losses.

WHEREFORE, Plaintiff demands judgment against the Defendants, on his own behalf and that of similarly situated class members, for disgorgement of the monies by which the Defendants were unjustly enriched, compensatory damages, including interest, punitive damages, attorneys' fees, costs of suit, and other relief as this Court deems just and proper.

## COUNT III
**(Unjust Enrichment)**

69. Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth at length.

70. Defendants have been enriched by their fraudulent acts and omissions alleged herein.

71. These fraudulent acts and omissions allowed the Defendants to gain millions of dollars in profits that would not have been gained but for Defendants' fraudulent acts and omissions.

72. Plaintiff and the putative Class paid Defendants an amount that exceeds the value of the tickets as a result of Defendants' fraudulent acts and omissions.

73. Plaintiff and the putative Class suffered damages due to Defendants' acts and omissions as alleged herein.

74. Defendants have been unjustly enriched as a result of its fraudulent acts and omissions.

75. Defendants lack any legal justification for having engaged in a course of fraudulent acts and omissions as alleged herein at Plaintiff's and the putative Class' expense.

WHEREFORE, Plaintiff demands judgment against the Defendants, on his own behalf and that of similarly situated class members, for disgorgement of the monies by which the Defendants were unjustly enriched, compensatory damages, including interest, punitive damages, attorneys' fees, costs of suit, and other relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the Defendants, on their own behalf and on behalf of all others similarly situated, as follows:

a. an Order certifying the Plaintiff Class determining that this action is a proper class action maintainable under Federal Rules of Civil Procedure, 23, and appointing Plaintiffs and their respective counsel to represent the Class;

b. that judgment be entered against the Defendants in an undetermined amount for the claim of fraudulent misrepresentation and/or suppression;

c. for actual damages, disgorgement of unjust enrichment, exemplary or punitive damages, and costs of suit including attorneys' fees, pursuant to the fraudulent misrepresentation and/or suppression claims;

d. for pre-judgment and post-judgment interest at the maximum rate allowable at law;

e. for equitable and injunctive relief enjoining Defendants from pursuing the policies acts and practices described in this Complaint;

f. for experts' fees and costs; and

g. for such further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial of all issues by jury.

Respectfully submitted,

Dated: May 14, 2009

/s/ Jan R. Schlichtmann_____
Jan R. Schlichtmann (BBO#445900)
Law Office of Jan R. Schlichtmann
P.O. Box 233
Prides Crossing, MA 01963
978-927-1037

Peter A. Lagorio (BBO#567379)
Lynda Carey Paris (BBO#651108)
Law Office of Peter A. Lagorio
63 Atlantic Avenue
Boston, MA 02110
617-367-4200